515 A.2d 865

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Rodney Lawrence GRIFFIN, Appellant.**

Supreme Court of Pennsylvania.

Argued April 17, 1986.

Decided Sept. 26, 1986.

556

Leslie Potter, Media, for appellant.

John A. Reilly, Dist. Atty., Dennis C. McAndrews, Media, for appellee.

Before LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Rodney Lawrence Griffin, appellant, brings this appeal from his convictions for murder of the first degree and criminal conspiracy, his judgments of sentence of death (on the murder conviction) and five to ten years imprisonment (on the conspiracy conviction), and from the lower court's denial of his supplemental post-verdict motions alleging ineffective assistance of counsel following a post-conviction evidentiary hearing on said motions.

During the early morning hours of December 17, 1983, Ellen Lewis was shot once in the head from very close range and died as a result of her wound. Ms. Lewis, a student at Cheyney State University in Delaware County, was attending a party in room 521 of a dormitory building on the Cheyney campus. The room was quite crowded with students who were dancing to loud music and strobe lights. There were no eyewitnesses to the shooting.

Appellant was arrested on April 17, 1984, and charged with the murder of Ellen Lewis, aggravated assault, criminal conspiracy and various weapons charges. The lower court granted appellant's pre-trial motion for a change of venire and, on September 19, 1984, Chief Justice Nix for this Court signed an order directing that a jury be empanelled in Montgomery County to serve as the trial jury in the Court of Common Pleas of Delaware County.

Voir dire began on October 2, 1984, with the Honorable Melvin G. Levy presiding. A jury was selected and trial commenced on October 5th, ending on October 10th with the jury's verdict finding appellant guilty of murder of the first degree and criminal conspiracy.[1] A sentencing proceeding was conducted immediately thereafter before the same jury as required under the death penalty sentencing

1. Respectively, 18 Pa.C.S.A. §§ 2502(a) and 903.

procedures of the Sentencing Code, 42 Pa.C.S.A. § 9711. The jury returned the sentence of death on the murder conviction on its findings that the Commonwealth had proven three aggravating circumstances, namely that "a contract was made," "recklessly endangering the lives and welfare of other persons," and "the significant history of prior convictions," [2] which aggravating circumstances outweighed any mitigating circumstances.

Written post-verdict motions were filed and denied by a court en banc, and formal sentencing was scheduled for August 5, 1985. At this formal sentencing proceeding, appellant sought leave to file, nunc pro tunc, a handwritten pro se document captioned "Supplemental post-verdict motions—effective assistance of counsel." The lower court "determined to treat the motions as a PCHA [Post-Conviction Hearing Act, 42 Pa.C.S.A. §§ 9541–9551] petition alleging ineffective assistance of trial counsel." Findings of Fact No. 6, Opinion and Order of Judge Levy, December 20, 1985 denying appellant's motions.

An evidentiary hearing was held on October 11, 1985 on appellant's supplemental post-verdict motions, at which appellant chose to represent himself, with stand-by counsel appointed and consulted on occasion throughout the proceeding. The witnesses at this evidentiary hearing were appellant, for himself, and Joseph A. Malley, Esquire, defense trial counsel, for the Commonwealth. By opinion and order of December 20, 1985, the Court of Common Pleas of Delaware County, per Judge Levy, denied appellant's supplemental post-verdict motions.

In this appeal, appellant challenges his convictions for murder and conspiracy, his judgments of sentence, and the lower court's denial of his original post-verdict motions and his supplemental (PCHA) post-verdict motions. For the

---

**2.** While the language of the jury as recorded on the verdict slip varied somewhat from the exact language of the corresponding sections of the Sentencing Code and from the lower court's instructions thereon, 42 Pa.C.S.A. § 9711(d)(2), (7) and (8), the variation is insignificant.

reasons that follow, we affirm the lower court's orders and appellant's convictions and judgments of sentence.

■ In his direct appeal, appellant first challenges the sufficiency of the evidence to sustain his convictions for murder of the first degree and criminal conspiracy. In evaluating this contention, we view the evidence in the light most favorable to the Commonwealth as verdict winner and, drawing all reasonable inferences therefrom favorable to the Commonwealth, determine if there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Stoyko*, 504 Pa. 455, 462, 475 A.2d 714, 718 (1984); *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983); *Commonwealth v. Rhodes*, 510 Pa. 537, 540, 510 A.2d 1217, 1218 (1986). Viewed in that light, the record disclosed the following.

The Commonwealth presented numerous Cheyney students who were present on the fifth floor of the dormitory building and/or at the party in room 521 on that floor on the evening of December 16 and early morning of December 17, 1983. Three of these witnesses testified that appellant was present in room 521 at the time Ellen Lewis was shot at about 1:30 a.m., December 17th. One of these witnesses observed him near the area from which the fatal shot had been fired approximately one minute before the shooting. Other witnesses saw appellant in the vicinity of room 521 shortly before or after the shooting.

Additionally, three witnesses testified that appellant had brandished a hand gun on the night of the party on at least two occasions prior to the shooting in the vicinity of room 521, and, on other occasions earlier in the evening, had displayed some bullets. Appellant had threatened Charles Faust with the gun, in the presence of another witness. Charles Faust identified a photograph of the murder weapon, found outside the dormitory building shortly after the shooting, as the gun that appellant had earlier threatened him with. Another witness also identified the photograph

of the murder weapon as appellant's gun, with which he had seen him on eight or nine previous occasions within a month or two of the shooting.

The Commonwealth also presented evidence as to appellant's motive for killing Ellen Lewis. Various state and federal law enforcement officers and officials testified about an investigation of a bank fraud scheme of illegal check cashing transactions involving the victim and one Russell Moss. Testimony of these witnesses disclosed that Ellen Lewis had been arrested for her participation in this scheme and had agreed to cooperate in the investigation and to testify against Russell Moss. Mr. Moss had been confronted with the evidence against him on October 26, 1983 by federal investigators. Mr. Moss was a close friend of appellant and both were members of a fraternal organization known as Groove Phi Groove. Although law enforcement officers made extensive efforts to locate Mr. Moss, he could not be found and had not been seen in the area since shortly after appellant's arrest for the shooting of Ellen Lewis.

Important testimony was provided by Tyrone Trehern, a young man who lived near the Cheney campus and who had participated with appellant in an armed robbery of a beer distributor in February, 1983, along with another accomplice. Trehern testified that approximately one-month before Ellen Lewis was shot, appellant told Trehern that Russell Moss was in trouble and wanted appellant to do him a favor and "eliminate" Ellen Lewis to prevent her from testifying against him (Moss). Trehern testified that appellant made similar statements in early December, 1983 and that appellant stated he was to receive "drugs, maybe cocaine, a gun and money, all adding up to $10,000 for the execution of Ellen Lewis." Notes of Testimony (N.T.), October 5, 1984 at 194. This witness further testified that he visited appellant (at appellant's request) in Delaware County Prison where appellant was being held on a charge of robbery. Appellant wanted Trehern to admit his involvement in the beer distributor robbery and to admit that he

(Trehern), not appellant, was the gunman in that robbery. At this time, Trehern testified, appellant told him that he had killed Ellen Lewis at a party where he had been dancing next to her and pulled out a gun and shot her in the head. N.T. *id.* at 196.

■ Based on the foregoing record evidence, it is obvious that there was sufficient evidence to establish appellant's guilt of murder of the first degree and criminal conspiracy beyond a reasonable doubt.[3]

■ Appellant next asserts that the verdict was against the weight of the evidence. Essentially, appellant's argument regarding the weight of the evidence is that Tyrone Trehern's testimony was inherently unreliable and unworthy of belief, was "hopelessly contradictory" to the testimony offered by himself and defense witness, Lamont Foster, and that the lower court erred, therefore, in refusing to grant him a new trial on this basis. This argument has no merit.

In *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982), we stated:

The decision to grant or deny a motion for a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial

3. The elements of these crimes are established by the Crimes Code as follows:

**18 Pa.C.S.A. § 2502. Murder**

(a) **Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**18 Pa.C.S.A. § 2501. Criminal homicide**

(a) **Offense defined.**—A person is guilty of criminal homicide if he intentionally ... causes the death of another human being.

**18 Pa.C.S.A. § 903. Criminal conspiracy**

(a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

court. Absent an abuse of discretion its denial of such a motion will not be disturbed. *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972).... As this Court stated in *Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976):

> "On appellate review of a criminal conviction, we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. *Commonwealth v. Woodhouse*, 401 Pa. 242, 261, 164 A.2d 98 (1960). To do so would require an assessment of the credibility of the testimony and that is clearly not our function. *Commonwealth v. Sullivan*, 436 Pa. 450, 456, 263 A.2d 734 (1970) cert. denied, 400 U.S. 882 [91 S.Ct. 127, 27 L.Ed.2d 120] (further citations omitted). This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. *Commonwealth v. Stanley*, 453 Pa. 467, 309 A.2d 408 (1973) (further citations omitted).

*Id.*, 498 Pa. at 251, 445 A.2d at 1206. *See also Commonwealth v. Goldblum*, 498 Pa. 455, 466–67, 447 A.2d 234 (1982).

In addition to taking the stand to testify in his own behalf and deny that he had murdered Ellen Lewis, appellant's defense consisted primarily of an effort to discredit the testimony of the key Commonwealth witness, Tyrone Trehern. Defense counsel vigorously cross-examined the witness in an attempt to demonstrate that his testimony was biased and fabricated in an effort to gain lenient treatment in the prosecution against him for the armed robbery of the beer distributor. Trehern admitted on cross-examination that he had not implicated appellant in the Ellen Lewis shooting until April 15, 1984, after he had admitted to a state police officer that he had been the gunman in the armed robbery. Counsel explored the "lenient treatment" expected to be given Mr. Trehern pursuant to the written plea agreement regarding that prosecution (introduced by the Commonwealth), including the fact that the anticipated

maximum sentence of imprisonment was twenty-two months, that the witness had been released from jail on his own recognizance and that the state police officer would speak on his behalf if he cooperated in the prosecution of appellant.

Additionally, the defense introduced Lamont Foster, a Delaware County Prison inmate who was acquainted with both appellant and Mr. Trehern and who had been in the prison at the same time as appellant. Lamont Foster testified that Mr. Trehern had been concerned that appellant was going to implicate him (Trehern) in the beer distributor robbery, and that "he was going to set [appellant] up any way he could." N.T. October 8, 1984 at 84. Appellant then testified that he had informed Mr. Trehern that he would implicate Trehern in the armed robbery if the latter did not turn himself in, and that, in return, Trehern threatened to and did set him up for killing Ellen Lewis.

It is apparent that appellant would have us believe his testimony and Lamont Foster's, and disbelieve Tyrone Trehern's. That is, he would have us substitute our assessment of credibility for that of the jury, which chose to believe Mr. Trehern and to reject the defense testimony. This we will not do. The jury was in the best position to assess the respective credibility of the witnesses, and appellant had every opportunity to explore the possibility of Tyrone Trehern's bias and the possibility that he fabricated his testimony in order to receive lenient treatment in the prosecution of the armed robbery. The court fully instructed the jury as to its function in assessing credibility, in light of the attempted defense impeachment upon Tyrone Trehern's credibility based on the potential for bias and fabrication. Under these circumstances, the jury verdict was most certainly not against the weight of the evidence.

■ Appellant next argues that the lower court erred in failing to grant his pre-trial motion for a change of venue. This argument ignores the fact that appellant's pre-trial motion was for a change of venue *or a change of venire which was granted.* The Pennsylvania Rules of Criminal

Procedure express no preference for either change of venue or change of venire as a remedy where the lower court determines that a fair and impartial trial cannot be held before a jury of the county in which the case is pending, Pa.R.Crim.Pro. Rule 312, Motion for Change of Venue or Change of Venire, and appellant offers no reason in law or in logic as to why a change of venue would have been a more effective remedy than a change of venire in the instant case. Appellant received one of the two remedies he asked for and did not appeal the "denial" of the change of venue or the grant of the change of venire, as required by the Pennsylvania Rules of Appellate Procedure, Rule 903(c)(1).[4] Under these circumstances, it is frivolous to suggest that the lower court erred in failing to grant the motion for a change of venue.[5]

■ Appellant next asserts he was denied a fair trial by the admission of evidence of the bank fraud scheme, evidence introduced by various federal and state officers and officials which included out-of-court statements made by the victim and by Russell Moss. These statements, claims appellant, were inadmissible hearsay. We adopt the analy-

4. "[A]n appeal from any of the following orders shall be taken within ten days after the entry of the order from which the appeal is taken: (1) An order changing venue or venire in a criminal proceeding." Pa.R.A.P. Rule 903(c)(1).

5. Moreover, absent an abuse of discretion, the trial court's ruling on a motion for change of venue will not be disturbed. *Commonwealth v. Rigler*, 488 Pa. 441, 412 A.2d 846 (1980), *cert. denied* 451 U.S. 1016, 101 S.Ct. 3004, 69 L.Ed.2d 387 (1981). Appellant points to only six articles and one television account within a fifteen day period in April-May, 1984, some six months before his trial. That publicity, plus the "grapevine" in a small community, appellant claims, demonstrate that a fair and impartial trial was impossible in Delaware County. The publicity in this case fell far short of the sort of publicity we have found to be "inherently prejudicial" so as to relieve the defendant of his burden of proving prejudice. *See Commonwealth v. Romeri*, 504 Pa. 124, 470 A.2d 498 (1983), *cert. denied* 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984). Review of the extensive voir dire of the jury panel from Montgomery County makes it plain that the jury selected was fair and impartial, and that appellant could not have been prejudiced by the publicity or the "grapevine." There was no abuse of discretion in "denying" the motion for a change of venue.

sis of the lower court regarding this allegation of inadmissible hearsay. The lower court stated:

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Rhodes,* 272 Pa.Super. 546, 416 A.2d 1031 (1979). When an extrajudicial statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and is not excludable under the hearsay rule. *Commonwealth v. Cassidy,* 315 Pa.Super. 429, 462 A.2d 270 (1983). In the instant case, the Commonwealth attempted to establish the defendant's motive for killing Ellen Lewis by showing that he was paid by Russell Moss to do so. To establish Russell Moss' reasons for wanting Ellen Lewis killed, the Commonwealth presented evidence to show that Moss and Lewis were involved in a bank fraud scheme, that they were the focus of investigations being conducted by both federal and local law enforcement officials and that Miss Lewis had agreed to testify against Moss. The Commonwealth did not offer the out-of-court statements of Ellen Lewis and Russell Moss to prove the truth of the matters asserted therein, but to show that an investigation was being conducted of a bank fraud scheme, and that Ellen Lewis and Russell Moss were the focus of that investigation. This evidence was offered to supply defendant's motive for the killing of Ellen Lewis. The Court instructed the jury that these out-of-court statements were "not being offered for the purpose of proving or demonstrating the truthfulness of the contents of the conversation; but merely the fact that the conversation was had ..." (N.T. 10/5/84, p. 205). Thus, in view of the fact that the statements of Lewis and Moss were offered for a purpose other than proving the truth of their contents, the statements were not hearsay and were therefore not excludable on the basis of a hearsay objection. We conclude that the Court did not err in overruling defendant's objections to the admissibility of these statements, particularly in view of the fact that the jury was properly instructed with respect to the manner in which this evidence was to be regarded.

Opinion of June 25, 1985, slip op. at 10–11. *See also* McCormick, *Evidence* §§ 244 and 249 (West 2d ed.); *Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 240 A.2d 71 (1968). *Commonwealth v. Darden*, 311 Pa.Super. 170, 457 A.2d 549 (1983).

Appellant also raises numerous allegations that he was denied effective assistance of counsel at his trial and sentencing proceeding. The standards for reviewing claims of ineffective assistance of counsel have been frequently stated by this Court. In *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985), we stated:

> This Court recently reiterated the appellate standards for reviewing claims of ineffective assistance of counsel; in *Commonwealth v. Anderson*, 501 Pa. 275, 286, 461 A.2d 208, 213 (1983) we stated:
>
> > We remain guided by the standards first articulated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605–06, 235 A.2d 349, 352–53 (1967):
> >
> > > [C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests.
> > >
> > > This test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that the trial counsel's decisions had any reasonable basis.
> > >
> > > Moreover, counsel will not be deemed ineffective for failing to raise baseless or frivolous issues. *Commonwealth v. Arthur*, 488 Pa. 262, 265, 412 A.2d 498 (1980). It is only when the claim which has been foregone is of arguable merit that further inquiry must be made into the basis for counsel's decision not to pursue the matter. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687, 696 (1977). *Id.*, 506 Pa. at 614–15, 487 A.2d at 805–06.

Moreover, implicit in these standards is the requirement that the defendant must demonstrate that he was

harmed by his attorney's alleged ineffective assistance. As we first observed in *Commonwealth ex rel. Washington v. Maroney, supra:*

> Cases such as *Commonwealth ex rel. Gallagher v. Rundle,* 423 Pa. 356, 223 A.2d 736 (1966) and *Commonwealth ex rel. Jones v. Maroney,* 417 Pa. 567, 209 A.2d 285 (1965) indicate that, for relief to be granted, appellant must demonstrate that counsel's ineffectiveness worked to his prejudice.... Since our test requires that we examine the approach employed by trial counsel in light of the available alternatives, a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized. Obviously, then, if there is no reasonable basis to support trial counsel's decision (a finding prerequisite to a conclusion of ineffectiveness), his decisions a fortiori were prejudicial to the client.

427 Pa. at 605, n. 8, 235 A.2d at 353, n. 8. *See, e.g., Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332 (1981); *Commonwealth v. Anderson,* 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. McKenna,* 498 Pa. 416, 446 A.2d 1274 (1982). *See also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (federal standards for reviewing claims of ineffective assistance of counsel).

■ With these standards to guide us, we review appellant's claims of ineffective assistance of trial counsel.[6] The first involves trial counsel's failure to object to the introduction of certain out-of-court declarations made by Tyrone Trehern to Pennsylvania State Police Trooper Thomas Ansel, the trooper who interviewed Mr. Trehern on April 15, 1984. Appellant characterizes Trooper Ansel's testimony as an attempt merely to corroborate Trehern's in-court testimony by proof of prior consonant statements, and states that "the undisputed testimony of an authority figure, in

6. These claims were articulated in appellant's supplemental pro se post-verdict motions.

this case Trooper Ansel, repeating and thereby lending credence to Trehern's testimony [had] a prejudicial effect on the jury's deliberations and ultimate verdict." Brief for Appellant at 24. We agree with the trial court that Trooper Ansel's testimony was admissible under a well-recognized exception to the hearsay rule, that prior consonant statements, while not admissible merely to buttress or corroborate a witness' in-court testimony, are admissible to rehabilitate that witness' credibility and to rebut accusations or suggestions of fabrication or of corrupt motives. *Commonwealth v. Cruz,* 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Wilson,* 394 Pa. 588, 148 A.2d 234 (1959), *cert. denied* 361 U.S. 844, 80 S.Ct. 97, 4 L.Ed.2d 82.

In the instant case, defense counsel cross-examined Tyrone Trehern at length in an attempt to impeach his credibility by demonstrating his potential for fabricating his testimony in order to receive lenient treatment from the Commonwealth in the prosecution of his own case. N.T. October 8, 1984 at 44–64. As part of this impeachment, defense counsel brought out the fact that Tyrone Trehern did not implicate appellant in the murder of Ellen Lewis until April 15, 1984 after Trehern had admitted to Trooper Ansel that he had been the gunman in the robbery of the beer distributor, and attempted to raise the inference that he tried to "strike a deal with the District Attorney's Office in April, before Rodney Griffin would turn [him] in on the robbery." *Id.* at 49.

The Commonwealth called Trooper Ansel to rebut the inference of fabrication and the inference that a deal had been made on or before April 15, 1984. Trooper Ansel testified that he went to Tyrone Trehern that day to ask him some questions about the armed robbery, at which time he admitted to being the gunman in that robbery. Trooper Ansel then asked Trehern if he knew anything about the murder of Ellen Lewis. At that point, Trehern indicated appellant was responsible for the murder and stated that appellant had told him about the "alleged hit on Ellen Lewis prior to it happening, but he did not believe that Rodney

would do something like that; and he kind of wrote it off." *Id.* at 149. Trooper Ansel further testified that he made no deals or promises in exchange for this statement except that he would "speak for [Trehern] at the time of sentencing with regard to the robbery." *Id.* Under these circumstances, Tyrone Trehern's prior statements to Trooper Ansel were plainly admissible to rehabilitate Trehern's testimony and rebut defense counsel's suggestions of fabrication and improper motive. *Commonwealth v. Byrd,* 490 Pa. 544, 557–58, 417 A.2d 173 (1980); *Commonwealth v. Bennett,* 471 Pa. 419, 424–25, 370 A.2d 373 (1977); *Commonwealth v. Gaddy,* 468 Pa. 303, 362 A.2d 217, 223 (1976).

Accordingly, any objection to Trooper Ansel's testimony on hearsay grounds would have been of no arguable merit. Moreover, as defense counsel initiated discussion of the events of April 15, 1984 and the timing of Trehern's statement regarding the shooting of Ellen Lewis, he had a reasonable basis for not objecting to Trooper Ansel's testimony which, at least in large part, supported the inferences defense counsel was attempting to raise. Counsel was clearly not ineffective, therefore, in failing to object to the trooper's testimony on hearsay grounds.

■ Appellant also alleges that trial counsel provided ineffective assistance in the following specific instances: failure to seek compulsory process of all possible witnesses from the party and, in particular, Brian Wesley, Barry Jones and Christaphene Doswell, to testify in his behalf; failure to use a diagram of the party room with locations of all of the people in attendance immediately prior to the shooting; failure to request a jury view of the crime scene; failure to object to Commonwealth testimony concerning the bank fraud scheme; failure to cross-examine certain Commonwealth witnesses adequately; and failure to offer evidence to impeach Commonwealth witnesses. We have carefully reviewed these allegations raised in appellant's supplemental post-verdict motions, the briefs and supplemental briefs of the parties, and the transcript of the "PCHA" proceedings of October 11, 1985, and are satisfied

that these claims of ineffectiveness have no merit. Trial counsel, a veteran criminal defense attorney, had made a thorough investigation of and preparations for this trial, assisted by an investigator, law clerk and another attorney. Over seventy persons were interviewed by trial counsel or one of his assistants, many on several occasions, and appellant was interviewed ten to twenty times before trial. At the "PCHA" hearing, trial counsel responded to each of appellant's assertions and explained his strategy in failing to pursue the avenues that appellant claims should have been pursued. As the lower court's excellent opinion of December 20, 1985, denying appellant's supplemental post-verdict motions makes clear, all of these avenues either lacked arguable merit or were deliberately foregone as part of counsel's strategy designed to effectuate his client's interests. We, therefore, affirm the lower court's denial of appellant's supplemental post-verdict motions.

Appellant also challenges the verdict of death in this case on the novel theory that:

> no attorney, no matter how experienced and skilled, could possibly go from the rigors of a trial and the tension generated by jury deliberations to the sudden onslaught of the penalty phase and do an effective job during the latter. The trial attorney rendered ineffective assistance of counsel by failing to obtain another attorney to handle the penalty phase.

Brief for Appellant at 31. In effect, appellant seeks a per se rule which would hold that it is automatically ineffective assistance of counsel for trial counsel to represent a defendant at both the guilt and sentencing phases of a capital case. We reject this novel theory as devoid of merit or support in law, logic or common sense.

In *Commonwealth v. Pettus, supra,* this Court was asked to adopt a per se rule that trial counsel is ineffective for failing to seek transfer of a murder prosecution of a seventeen year old defendant from criminal to juvenile division. In rejecting this request, we stated:

We decline to adopt a *per se* rule for allegations of ineffective assistance of counsel involving failure to petition for such transfers. *Per se* rules are so harsh and depersonalizing that only in extreme cases need they even be considered. A *per se* rule for this type of ineffectiveness would in no way further the ends of justice....

\* \* \* \* \* \*

Trial counsel's failure to gather and marshall said evidence on appellant's behalf could constitute ineffectiveness only if such evidence existed. A search of the record and briefs, however, does not reveal *any* facts which would suggest appellant's amenability to special treatment or rehabilitation programs. Appellant's current counsel offers nothing more than boilerplate allegations of amenability. Without more, we will not conclude that trial counsel was ineffective in failing to petition for appellant's transfer to juvenile court. Assertions of ineffectiveness in a vacuum cannot be ineffectiveness. Counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract.

492 Pa. at 562–63, 424 A.2d 1332. So too in the instant case, appellant's claim of ineffective assistance of counsel at the sentencing stage is raised in a vacuum, without evidence or even a suggestion as to how "fresh" counsel at that stage may have been more effective than was trial counsel. These abstract allegations of ineffective assistance of counsel will not be considered by this Court. *See also Darden v. Wainwright,* —— U.S. ——, ——, 106 S.Ct. 2464, 2472–75, 91 L.Ed.2d 144 (1986) (petitioner failed to sustain burden of demonstrating trial counsel were ineffective because they allegedly devoted only the time between the closing of the guilt phase and beginning of sentencing phase to preparation for sentencing).

■ Finally, appellant argues that he was "denied a fair trial by a jury of his peers when veniremen who hesitated to impose the death penalty were systematically struck." [7] Brief for Appellant at 34. There is no legal or factual basis for this claim.

Appellant's bare assertion, without reference to any particular prospective juror or portions of the record, that "the jury selection in the instant case did not meet the standards set forth in *Witherspoon v. Illinois,*" 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), *id.,* is belied by the transcript of the extensive voir dire proceeding which took three days to complete. Review of that transcript reveals the trial court's scrupulous adherence to the dictates of *Witherspoon.* [8] On numerous occasions, prospective jurors who expressed hesitation or reservations about the death penalty were then questioned in depth about those feelings. Prospective jurors who maintained very strong, but not total, reservations against the death penalty were not excluded for cause, and every venireman who was excluded for cause on the basis of his or her position against the death penalty was excluded because he or she could not, under any circumstances, impose the death penalty required by the law and the facts proven by the Commonwealth. [9]

7. Appellant also contends that the death penalty is cruel and unusual punishment "although both the United States Supreme Court and the Pennsylvania Supreme Court have upheld the death penalty and the constitutionality of 42 Pa.C.S. Sec. 9711...." Brief for Appellant at 33. It is too late in the day to argue that the death penalty is per se cruel and unusual punishment under either the state or federal constitutions. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 73–77, 454 A.2d 937 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

8. As voir dire was comported with such scrupulous adherence to *Witherspoon,* a fortiori the jury selection process was valid under the modified selection standards enunciated in *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), and recently reiterated and applied in *Darden v. Wainwright,* — U.S. —, —, 106 S.Ct. 2464, 2468–71, 91 L.Ed.2d 144 (1986).

9. For example, one venireman expressed strong moral reservations against the death penalty, but the court would not exclude her for cause even though "she probably has a 98 percent fixed opinion

Finally, we are required by statute to review the record and if there were no reversible errors at the trial, to affirm the sentence of death unless we determine that: the sentence of death was the product of passion, prejudice or any other arbitrary factor, the evidence failed to support the finding of an aggravating circumstance, or the sentence of death is excessive or disproportionate to the penalty imposed in similar cases. 42 Pa.C.S.A. § 9711(h)(3). We have so reviewed the record and find that the sentence of death imposed by the jury upon Rodney Lawrence Griffin was based upon sufficient evidence to support the findings of three aggravating circumstances (contract killing, placing others in grave risk of death, and significant history of felony convictions involving violence or its threat,[10] see note 2, supra ), and was not the product of passion, prejudice or any other arbitrary factor. Additionally, we have reviewed the data and information pertaining to similar cases that has been compiled by the Administrative Office of Pennsylvania Courts pursuant to this Court's directive. See Commonwealth v. Frey, 504 Pa. 428, 475 A.2d 700, 707–08 (1984), cert. denied 469 U.S. 963, 105 S.Ct. 360, 83 L.Ed.2d 296 (1984). Our review of that data discloses that the sentence of death is neither excessive nor disproportionate to that imposed in similar cases involving these aggravating circumstances. See Commonwealth v. Stoyko, 504 Pa. 455, 475, 475 A.2d 714, 724 (1984), cert. denied 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984).

For the foregoing reasons, we affirm appellant's convictions and affirm the sentence of death for the conviction for murder of the first degree and the sentence of imprisonment for the conspiracy conviction. Additionally, we affirm the order of the Court of Common Pleas of Delaware

against the death penalty, but it is not 100 percent." N.T., Voir dire, October 3, 1984 at 100.

10. The sentencing hearing disclosed that appellant had numerous convictions for robberies and aggravated assaults, including four robberies on a single day, and that at least one of his victims had been shot.

574

County denying appellant's supplemental post-verdict motions.[11]

NIX, C.J., did not participate in the consideration or decision of this case.

---

**11.** The prothonotary of the Eastern District is directed to transmit to the Governor, as soon as possible, the full and complete record of all proceedings below and of review by this Court. 42 Pa.C.S.A. § 9711(i).