J. S26030/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MILES COOKE, | : | |
| | : | |
| Appellant | : | |
| | : | No. 516 MDA 2016 |

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0000932-2015

BEFORE: BOWES, J., DUBOW, J., and FITZGERALD, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 15, 2017**

Appellant, Miles Cooke, appeals from the Judgment of Sentence entered by the Dauphin County Court of Common Pleas following his conviction by a jury of First-Degree Murder and Criminal Conspiracy.[1] After careful review, we affirm.

The relevant facts, as gleaned from the certified record and the trial court's Pa.R.A.P. 1925(a) Opinion, are as follows. On May 30, 2014, Appellant and his brother, Justin Asaad Cooke, shot and killed the victim, Ronald McGruder, near the corner of Hanover and Cameron Streets in

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a) and 18 Pa.C.S. § 903, respectively.

Harrisburg, Pennsylvania. The following events leading up to the murder are relevant to our review.

Two nights before the murder, Appellant's brother Justin and McGruder had gotten into a heated argument when McGruder blamed Appellant for killing McGruder's friend Warren Beasley in 2013. McGruder told Justin that, "if you want to kill me, if you feel some type of way and you want to do something to me, my heart is on my sleeve. So if you got to take a shot, take a shot." Trial Court Opinion, dated 7/19/16, at 3 n.6.

On the night of May 29, 2014, McGruder went out drinking with his friend James Moffitt and visited Double D's bar. Surveillance video showed that both Appellant and his brother Justin were at Double D's at the same time. The video also showed Appellant, Justin, and McGruder leave Double D's together and enter a tan Audi. Justin entered the front passenger seat, Appellant entered the driver's seat, and McGruder entered the back seat. The three men left Double D's parking lot at 1:46 A.M. on May 30, 2014.

Jasmine Bullock, an eyewitness to the murder who resided on Hanover Street, awoke to screaming from the street and looked out her window to see Appellant, Justin, and McGruder. She witnessed one of the men stand over McGruder on the ground and shoot him twice in the head. Bullock called 911 at 1:58 A.M. Although she could not see the faces of the two standing men, Bullock provided clothing descriptions matching Justin as the shooter and Appellant nearby. After the shooting, Appellant and Justin ran

toward their running car, entered the vehicle in the same positions as when they left the bar, and drove away.

Appellant and Justin provided identical voluntary statements to police shortly after the murder. They confirmed the clothing that they were wearing, the precise route they took after leaving the bar with McGruder, and that they were driving a tan 2000 Audi owned by Appellant's girlfriend.

Police arrested Appellant on October 2, 2014, the day police obtained arrest warrants for both Appellant and Justin. Police were unable to arrest Justin that same day after media coverage widely publicized Appellant's arrest and the fact that they were looking for Justin. Police in North Carolina arrested Justin on October 22, 2014.

Appellant filed a Motion *in Limine* seeking to preclude evidence of Appellant's cell phone records at trial. Appellant argued that the Commonwealth provided these records to Appellant "too late." Appellant also objected to: (1) Detective Glucksman's testimony about cell phone tower data and "ping analysis" as inappropriate expert testimony, and (2) a demonstrative map displaying information contained in Appellant's cell phone records. N.T. Motion, 10/7/15, at 22-26. The trial court admitted the cell phone records, Detective Glucksman's testimony, and the map. **Id.** at 26.

Appellant also filed a Motion *in Limine* to preclude Courtney Williams' testimony about McGruder's statements to Justin two days before the

murder, arguing that the statements were irrelevant and constituted inadmissible hearsay. On October 7, 2015, the trial court conducted a hearing prior to trial. The Commonwealth argued that this testimony was evidence of Appellant's motive to kill McGruder. The trial court denied Appellant's Motion on October 8, 2015.

Appellant and Justin proceeded to a joint jury trial. The Commonwealth presented the testimony of the eyewitness Jasmine Bullock, McGruder's friend James Moffitt, investigating detectives, a forensic pathologist, emergency responders, a forensic investigator, and a North Carolina detective. The Commonwealth also presented video surveillance evidence from a church near the crime scene, Appellant's cell phone records, and cell phone tower data.

Appellant presented the testimony of his girlfriend Dorian Bradford, a second resident, John Stoddart, who heard gunshots the night of the murder and purportedly observed the fleeing car's taillights, and an investigator from the Dauphin County Public Defender's Office.

The jury convicted Appellant of First-Degree Murder and Criminal Conspiracy. On October 15, 2015, the trial court sentenced Appellant to the statutorily mandated term of life in prison.[2] Appellant filed a timely Post-Sentence Motion, which was denied by operation of law on February 23, 2016.

---

[2] 42 Pa.C.S. § 9711.

Appellant filed a timely Notice of Appeal on March 23, 2016.[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents five issues for our review:

[1.] Did the trial court err by denying Appellant's pre-trial motion *in limine* to preclude cell phone records from being offered into evidence by Detective Glucksman [] by the Commonwealth since they were provided to the Appellant only after a jury was selected and seated?

[2.] Did the trial court err by denying Appellant's pre-trial motion *in limine* to disqualify Detective Glucksman from testifying to those records with respect to cell phone tower "pinging?"

[3.] Did the trial court err by denying Appellant's pre-trial motion *in limine* to preclude the testimony of Courtney Williams with respect to 404(b) evidence of defendant's prior bad acts through hearsay testimony regarding the decedent's statements to co-defendant Justin Cooke regarding decedent's belief that Appellant was involved in another murder?

[4.] Was the evidence presented at trial insufficient for a jury to return a verdict of guilty?

[5.] Did the trial court err by denying Appellant's post-sentence Motion for New Trial or Arrest of [Judgment] because the verdict was against the weight of the evidence and based on inconsistent testimony and speculation from vague circumstantial evidence so as to shock one's sense of justice?

Appellant's Brief at 9 (reordered for convenience, underlining omitted).

---

[3] We note that the trial court docket incorrectly indicates that Appellant filed his Notice of Appeal on March 31, 2016. This appears to be the date that the Dauphin County Clerk of Courts forwarded Appellant's Notice of Appeal to this Court. Our review of the certified record shows that the Notice of Appeal is clearly stamped, received, and filed by the Dauphin County Clerk of Courts on March 23, 2016.

In his first three issues, Appellant challenges the trial court's evidentiary rulings. The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (citation and quotation omitted). "[A]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence or the record." *Commonwealth v. Cameron*, 780 A.2d 688, 692 (Pa. Super. 2001) (citation and quotation omitted).

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401; *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002). "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

**Issue 1: Timing of Cell Phone Records**

In his first claim on appeal, Appellant contends that the trial court improperly admitted Appellant's cell phone records in violation of Pa.R.Crim.P. 573 where the Commonwealth provided the records to Appellant "too late." **See** Appellant's Brief at 26-27; N.T. Motion, 10/7/15, at 23. Appellant avers that "the Commonwealth presented the records after a jury had already been selected in the case[,]" and argues that providing the cell phone records "so close to the start of trial was prejudicial to the defense." Appellant's Brief at 27.

"Generally, on review of an order granting or denying a discovery request, an appellate court applies an abuse of discretion standard." **Commonwealth v. Mendez**, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted).

Pre-trial discovery in criminal cases is governed by Pennsylvania Rule of Criminal Procedure 573. The rule lists certain items and information that are subject to mandatory disclosure by the Commonwealth when they are: (1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor. Mandatory discovery includes:

> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;
>
> (b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory

statement was made that is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

Pa.R.Crim.P. 573(1)(a)-(g).

The Rule also contains a remedy provision, which provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

"[W]here the evidence is equally accessible or inaccessible to both the Commonwealth and the defense, the defense cannot use the discovery rules against the Commonwealth for its failure to produce the evidence." **Commonwealth v. Dent**, 837 A.2d 571, 585 (Pa. Super. 2003) (citation omitted).

The trial court addressed Appellant's discovery challenge as follows:

Appellant was notified prior to his trial that his cell phone records would be entered into evidence. This is not a case of a last[-]minute tactic by the Commonwealth to surprise the Appellant. In our society today, nearly every adult has a cell phone that acts like a minicomputer that can track calls, locations, store pictures, etc. The cell phone records in the instant matter[] could have just as easily been obtained by the Appellant (as they were his own phone records). Attempting to bring in cell records did not surprise the Appellant to the extent that it should have been excluded from evidence. Finally, evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. P[a].R.E. 404. Here, the evidence was relevant.

Trial Court Opinion, dated 7/19/16, at 9-10. We agree with the trial court's analysis.

Moreover, insofar as Appellant complains of the Commonwealth's failure to provide the cell phone records earlier, our precedents make clear that Appellant may not use the discovery rules against the Commonwealth where Appellant had equal access to his own cell phone records.[4] **See Dent**, **supra** at 585.

Because we discern no violation of Rule 573 by the Commonwealth, the trial court did not err or abuse its discretion by refusing to preclude Appellant's cell phone records at trial. Accordingly, Appellant's first claim is without merit.

---

[4] Appellant does not allege in his Brief, and Appellant did not allege during the pre-trial hearing, that the Commonwealth had intentionally withheld the cell phone records in any way.

**Issue 2: Cell Phone Tower "Pinging" Testimony**

In his second claim on appeal, Appellant avers that the trial court improperly permitted Detective Glucksman to testify essentially as an expert witness regarding Appellant's cell phone records and historical tower data. Appellant's Brief at 28-29. Rather than "merely relaying the information contained in Appellant's records" as the Commonwealth claimed, Appellant argues that Detective Glucksman's "testimony required him to opine and speculate, as would an expert, regarding the location of the cell phone without the scientific and technical knowledge required." *Id.* at 28.

Ultimately, the admission of demonstrative evidence is a matter within the discretion of the trial court and, absent an abuse of discretion, its decision must stand. *Commonwealth v. Thomas*, 561 A.2d 699, 707 (Pa. 1989).

Demonstrative evidence is tendered for the purpose of rendering other evidence more comprehensible to the trier of fact and may be admitted if its relevance outweighs any potential prejudicial effect. *Commonwealth v. Serge*, 896 A.2d 1170, 1176 (Pa. 2006). *See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 901.08[1] *et seq.* (2017 ed. LexisNexis Matthew Bender).

The offering party must authenticate such evidence, which may be accomplished by the presentation of other evidence, such as witness

testimony, sufficient to support a finding that the matter in question is what its proponent claims. *Serge*, *supra* at 1176; *see* Pa.R.E. 901(a).

The overriding principle in determining if any evidence, including demonstrative, should be admitted involves a weighing of the probative value versus prejudicial effect. *Serge*, *supra*. The trial court must decide first if the evidence is relevant and, if so, whether it is more probative than prejudicial. *Commonwealth v. Hawk*, 709 A.2d 373, 376 (Pa. 1998).

The trial court addressed Appellant's evidentiary challenge as follows:

> Appellant additionally alleges that the [c]ourt erred by denying [Appellant's] related motion *in limine* to disqualify Detective James Glucksman from testifying to those [cell phone] records with respect to cell phone tower "pinging." This is not the first time that we have discussed Detective Glucksman and his testimony in regards to cellular phone records. Detective Glucksman testified to Appellant's cell phone records on the night of the incident. Based off these cell phone records, Detective Glucksman used software by Microsoft to create a map[,] which generally indicates a cell phone['s] location at any given time. Here, Detective Glucksman explained what "pinging" is (real time location of a cell phone) versus historical data. In the instant matter, Detective Glucksman testified that he did not use "pinging" (real time tracking of a cell phone) but instead engaged in historical tower data. Detective Glucksman was given the Appellant's cell phone records to analyze, [and] described the difference of "pinging" and historical [tower data]. As such, this was properly submitted to the jury as evidence.

Trial Court Opinion, dated 7/19/16, at 10 (footnotes omitted). We agree with the trial court's analysis.

Appellant frames Detective Glucksman's testimony as expert testimony regarding scientific, technical, or other specialized knowledge beyond that

possessed by the average layperson pursuant to Pa.R.E. 702. This assertion is incorrect based on our review of the certified record.

Rather than expert opinion, Detective Glucksman's testimony about Appellant's cell phone records and historical tower data constituted an explanation of the Commonwealth's demonstrative evidence that he had prepared for trial. Detective Glucksman constructed and created the maps that included the locations of cell phone towers based on Appellant's cell phone records. His testimony authenticated the demonstrative evidence by explaining how he created the maps using Appellant's cell phone records and how they were relevant.

Further, the maps were highly relevant in this case given the timing of the murder with respect to the video recordings and Appellant's statement about his particular route after leaving the bar. The trial court was well within its discretion in concluding that the evidence was more probative than prejudicial. As such, the trial court did not abuse its discretion in admitting Detective Glucksman's authentication testimony.

**Issue 3: Admission of Victim's Out-of-Court Statements**

In his third claim, Appellant avers that the trial court erred in denying his Motion *in Limine* to preclude certain testimony from Courtney Williams about McGruder's statements to Justin before the murder.

As described above, Williams overheard Justin arguing with McGruder two nights before McGruder's murder. McGruder blamed Appellant for killing

McGruder's friend Warren Beasley in 2013. McGruder told Justin that, "if you want to kill me, if you feel some type of way and you want to do something to me, my heart is on my sleeve. So if you got to take a shot, take a shot." Trial Court Opinion, dated 7/19/16, at 3 n.6.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). It is generally inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Rules of Evidence. *Commonwealth v. Busanet*, 54 A.3d 35, 68 (Pa. 2012). "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement[,]" such as motive or the effect on the listener. *Id.* *See also* Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 801.11[1] *et seq.* (2017 ed. LexisNexis Matthew Bender).

The trial court addressed Appellant's hearsay challenge as follows:

Appellant argues that the statements made by Courtney Williams constituted hearsay. As discussed below, Appellant's argument lacks merit.

Contrary to Appellant's assertions, Ms. Williams' statements were not hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Commonwealth v. Griffin*, [] 515 A.2d 865, 870 ([Pa.] 1986). When an extrajudicial statement is offered for a purpose other than providing the truth of its contents, it is not hearsay and is not excludable under the hearsay rule. *Id.* Thus, statements are admissible to establish ill-will or motive where they are not being offered for the truth of the matter asserted. *See Commonwealth v. Brown*, [] 648 A.2d 1177, 1182 ([Pa.] 1994) ([o]ut-of-court statement, which was not offered for its

truth, but only for the fact that it was made, was not inadmissible hearsay).[25]

[25] For a complete discussion, *see Commonwealth v. Puksar*, [740 A.2d 219] ([Pa.] 1999).

In the instant matter, the Commonwealth attempted to establish motive for killing Mr. McGruder by showing that there was ill-will between Mr. McGruder and Justin Cooke. The Commonwealth did not offer Ms. Williams' testimony to prove that Justin Cooke actually committed the killing of Mr. McGruder [or that Appellant actually killed Beasley in 2013], but to supply a motive for killing Mr. McGruder. Accordingly, this statement (that Mr. McGruder and Justin Cooke got into a heated discussion over the killing of Warren Beasley) was admissible, since it was not offered to prove the truth of the matter asserted, but rather to establish a motive for the killing[].

Additionally, we gave the following jury instructions in regards to motive:

Motive is not a part of the definition of [M]urder or any other crime. The Commonwealth is not required to prove a motive for the commission of the crime charged. However, you should consider the evidence of motive or the lack of motive.... You should weigh and consider the evidence tending to show motive, along with all other evidence in deciding whether the defendant is guilty or not guilty of the crime charged. It is entirely up to you to determine what weight should be given to the evidence concerning motive.

Now, of course there was the testimony, I believe it was the very first witness, Courtney Williams and that testimony was **offered to show motive**. She had testified about a certain conversation she heard or overheard and so forth and **that evidence was not offered to prove the truth or falsity of what happened with Mr. Beasle[y]'s killing. It was only offered to show a possible motive in the killing of Mr. McGruder. You are to accept that evidence only for that limited purpose.**

Accordingly, Ms. Williams' testimony was not hearsay and it was properly admitted as evidence.

Trial Court Opinion, dated 7/19/16, at 11-12 (footnote omitted; emphasis in original). We agree with the trial court's assessment.

As noted by the Commonwealth and the trial court, the Commonwealth did not present McGruder's statement to demonstrate that Appellant actually shot and killed Beasley in 2013. Rather, the Commonwealth presented the statement because it demonstrated that McGruder told Justin this information, and such information served as the motive for the McGruder's murder. *See Commonwealth v. Fisher*, 681 A.2d 130, 140 (Pa. 1996), *superseded on other grounds* by 42 Pa.C.S. § 9711(a) (holding that the victim's statements about the defendant that were communicated to the defendant were not hearsay when the statements were offered to prove the defendant's motive for killing the victim). We discern no abuse of discretion or error of law.

**Issue 4: Sufficiency of the Evidence**

Appellant next challenges the sufficiency of the evidence supporting his convictions for First-Degree Murder and Criminal Conspiracy. We review claims challenging the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Melvin*, 103 A.3d 1, 39 (Pa. Super. 2014).

The trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—may choose to believe all, part, or none of the evidence. *Id*. at 40. Moreover, a jury may base a conviction solely on circumstantial evidence. *Id*. In conducting our review, the appellate court may not weigh the evidence and substitute its judgment for that of the fact-finder. *Id*. at 39-40.

It is well-established that "[t]o sustain a conviction for [M]urder of the first degree, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with malice and specific intent to kill." ***Commonwealth v. Hitcho***, 123 A.3d 731, 746 (Pa. 2015); 18 Pa.C.S. § 2502(a). "Section 2502 of the Crimes Code defines murder of the first degree as an 'intentional killing,'" which, in turn, is defined as a "willful, deliberate and premeditated killing." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citing 18 Pa.C.S. § 2502(a), (d)). "[T]he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact[,] the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." ***Hitcho***, ***supra*** at 746.

Additionally, "[a] person is legally accountable for the conduct of another person when … he is an accomplice of such other person in the

commission of the offense." 18 Pa.C.S. § 306(b)(3). The statute sets forth that "[a] person is an accomplice of another person in the commission of an offense if … with the intent of promoting or facilitating the commission of the offense, he … aids or agrees or attempts to aid such other person in planning or committing it." 18 Pa.C.S. § 306(c)(1)(ii).

"[M]ere presence at the scene is insufficient to support a conviction: evidence indicating participation in the crime is required." **Commonwealth v. Lambert**, 795 A.2d 1010, 1024 (Pa. Super. 2002). Such a conviction "cannot be based upon mere assumption or speculation." **Id.**

Moreover, "[a]ccomplice liability may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." **Commonwealth v. Mitchell**, 135 A.3d 1097, 1102 (Pa. Super. 2016) (internal citations and quotations omitted).

To sustain the conviction for Criminal Conspiracy, there must be proof beyond a reasonable doubt that the defendant "(1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator."

***Commonwealth v. McCall***, 911 A.2d 992, 996 (Pa. Super. 2006) (citation

and quotation omitted).  ***See also*** 18 Pa.C.S. § 903.

> The trial court addressed Appellant's sufficiency challenge as follows:

> Instantly, the evidence of the Commonwealth and all reasonable inferences deduced therefrom, when taken in a light most favorable to the Commonwealth as verdict winner, support the jury's verdict of [F]irst-[D]egree [M]urder in the death of Ronald McGruder.  As previously stated, the Commonwealth presented evidence that Ronald McGruder and Justin Cooke were in a heated argument a mere day[-]and[-]a[-]half before Mr. McGruder's death.  The Commonwealth also presented testimony that Mr. McGruder and the Cooke brothers were together on the night of the incident.  There was video surveillance submitted that showed that the Cooke brothers and Mr. McGruder were at the same bar.  This video surveillance showed the Cooke brothers and Mr. McGruder getting into a vehicle (which said vehicle also being showed in the surveillance video footage from the church and the reenactment video).

> The Commonwealth presented evidence from an eye witness who testified that after the killing, two men got in a car and drove towards the city.  The Commonwealth presented video surveillance from a local church that showed vehicles driving in close proximity to the route that was taken on the night of the incident.  A forensic investigator, while the video was being played for the jury, described the vehicles.  The Commonwealth presented testimony from Detective Goshert who created a reenactment video using the alleged vehicle in question.  This reenactment video was taken at night and the same video surveillance system was used.  A side-by-side was played to the jury.  The jury was able to review these two videos and could reasonably infer that the car used on the night of the incident was the same car used in the reenactment video (same size, same color, same shape, and each car had a sunroof)[].

> The Commonwealth introduced the phone records on the night of the incident and were able to present testimony as to the location of [Appellant's] cell phone on the night of the incident.[29]

> Finally, the Commonwealth introduced evidence that Justin Cooke was detained in North Carolina after it was discovered he

was selling narcotics in a hotel room and it was discovered that he had an outstanding warrant in Pennsylvania. As such, and upon review of the record, this Court finds that the evidence and testimony presented at trial was sufficient to allow the jury to conclude that Appellant (Miles Cooke) committed [F]irst-[D]egree [M]urder.

[29] There was prior evidence submitted that [Appellant] and Justin Cooke were together on the night of the incident.

Trial Court Opinion, dated 7/19/16, at 13-14 (footnote omitted, paragraph breaks inserted). We agree with the trial court's assessment.

In the instant case, there was sufficient evidence to support Appellant's convictions for First-Degree Murder and Criminal Conspiracy. Appellant and his brother Justin left the bar with McGruder twelve minutes before the murder, and Appellant was driving. An eyewitness identified the three men by clothing descriptions and directly observed Justin shoot McGruder twice in the head while Appellant was standing nearby. Appellant drove the getaway vehicle.

Appellant and Justin provided synchronized statements to police following the murder, which police refuted through their investigations. The video surveillance and Appellant's cell phone records contradicted the story they told police and strengthened the Commonwealth's timeline and theory. Moreover, the argument between McGruder and Justin before the murder provided evidence of motive. Since Appellant was an active participant in the murder, he was criminally responsible for Justin's crimes committed in furtherance of their criminal endeavor as an accomplice. Thus, Appellant is

legally responsible for First-Degree Murder even though he did not personally pull the trigger of the gun that was used to kill McGruder.

Viewing the totality of the evidence in the light most favorable to the Commonwealth as the verdict winner, it is clear that the Commonwealth proved each element of the offenses. Appellant's sufficiency challenge, thus, fails.

**Issue 5: Weight of the Evidence**

In his fifth issue, Appellant avers that the jury's verdict was against the weight of the evidence. *See* Appellant's Brief at 22-25. When considering challenges to the weight of the evidence, we apply the following precepts:

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of witnesses.
>
> Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Talbert*, 129 A.3d 536, 545-46 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (quotation marks and citations omitted).

Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). Further, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *Talbert, supra* at 546 (quotation marks and citation omitted). It is well settled that we cannot substitute our judgment for that of the trier of fact. *Id*.

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014).

Appellant essentially asks us to reassess the credibility of the eyewitnesses and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. We, thus, conclude that Appellant is not entitled to relief on this claim.

Judgment of Sentence affirmed.

J. S26030/17

Judge Bowes joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2017