J-S01020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CESAR TOMAS TAVAREZ :
:
Appellant : No. 1199 MDA 2023

Appeal from the Judgment of Sentence Entered November 24, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004279-2019

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM PER CURIAM:              **FILED: APRIL 8, 2024**

Cesar Tavarez appeals from the judgment of sentence imposed after a jury found him guilty of multiple charges arising from a shooting. He challenges the sufficiency of the evidence to convict him of attempted homicide.[1]   Additionally, Tavarez' counsel filed a petition to withdraw representation and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967).   Upon review, we grant counsel's petition, and affirm the judgment of sentence.

The relevant facts are as follows.   On July 19, 2019, Freddie Jean-Paul and Tihara Brooks dropped Brooks' 11-year-old son, M.P., off at a neighborhood barbershop for a haircut.  Jean-Paul and Brooks then went to a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 2501(a).

nearby corner store to get a sandwich. While there, Jean-Paul was approached by Tavarez; the two men had an ongoing feud with each other. Co-defendant, Kelvin Tyler Jr., was with Tavarez. Tavarez and Jean-Paul had words. Tavarez and Tyler then left the store.

As Jean-Paul and Brooks walked out of the store, Tavarez and Tyler confronted them. Tavarez and Jean-Paul argued about things from the past. The three men touted their gang affiliations. Tyler threatened to fight Jean-Paul. It became very heated. Jean-Paul pulled out his gun and said, "step the f--- back." Tavarez and Tyler backed off. Jean-Paul and Brooks walked away; Tavarez said "Wait right there, I got something for you, I got something for you." Tavarez and Tyler walked in the opposite direction toward where Tavarez lived, just a couple blocks away.

Jean-Paul and Brooks walked to pick up M.P. Jean-Paul went to the car and Brooks went into the barbershop. She had to wait about 10 to 15 minutes until M.P.'s hair was finished. Brooks and M.P. then left the shop, walked down the street to the car, and got in; Brooks sat in the front passenger seat and M.P. sat behind Jean-Paul who was in the driver's seat. As soon as Brooks closed her door, Tavarez and Tyler pulled near their car, and she heard "what's up now, p----?" Brooks looked up and saw Tavarez, who had a gun, and Tyler standing on the driver's side of the car. Tavarez fired multiple shots into the car.

Brooks turned toward the back seat to help M.P. and saw her son get shot in the face. Tavarez ran from the scene. Jean-Paul and Brooks, who were not injured, rushed M.P. to the hospital.

Following an investigation, Tavarez was arrested and charged with multiple offenses.

On October 20, 2021, a jury found Tavarez guilty of three counts of attempted homicide, one for each victim, as well multiple counts of conspiracy to commit criminal homicide, aggravated assault, conspiracy to commit aggravated assault, aggravated assault with a deadly weapon, conspiracy to commit aggravated assault with a deadly weapon, recklessly endangering another person, conspiracy to commit recklessly endangering another person, and one count each of persons not to possess, and firearms not to be carried without a license.[2]

On November 24, 2021, the trial court sentenced Tavarez to an aggregate sentence of thirty-three (33) years to seventy (70) years of incarceration for the attempted homicides and persons not to possess a firearm. Tavarez filed a post-sentence motion, claiming the verdict was against the weight of the evidence, which the trial court denied.

---

[2] 18 Pa.C.S.A. §§ 901(a) – 2501; 903(a)(1) – 2501; 2702(a)(1); 903(a)(1) - 2702(a)(1), 2702(a)(4); 903(a)(1) – 2702(a)(4); 2705, 903(a)(1) – 2705, 6105(a)(1), and 6106(a)(1). The jury acquitted Tavarez of some charges.

Tavarez filed an appeal which this Court dismissed for failure to file a brief. Following an amended Post Conviction Relief Act[3] ("PCRA") petition, the court reinstated Tavarez' direct appeal rights *nunc pro tunc* by agreement.

Tavarez then filed this timely appeal. He and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925, but counsel should have filed a Rule 1925(c)(4) statement of intent to file an **Anders** brief. Counsel then filed a petition to withdraw from representation and an **Anders** brief with this Court. Tavarez did not retain independent counsel or file a *pro se* response to the **Anders** brief.

Before we may consider the issues raised in the **Anders** brief, we must first consider counsel's petition to withdraw from representation. **See Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010) (holding that, when presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw). Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, counsel must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new

---

[3] 42 Pa.C.S.A. §§ 9541-9546.

counsel, proceed *pro se*, or raise any additional points [the defendant] deems worthy of this Court's attention.

***Commonwealth v. Edwards***, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted). In ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of ***Anders***, *i.e.*, the contents of an ***Anders*** brief, and required that the brief:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361. Once counsel has satisfied the ***Anders*** requirements, it is then this Court's responsibility "to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018).

Here, counsel filed both an ***Anders*** brief and a petition for leave to withdraw. Further, the ***Anders*** brief substantially comports with the requirements set forth by our Supreme Court in ***Santiago***. Finally, the record included a copy of the letter that counsel sent to Tavarez of counsel's intention to seek permission to withdraw and advising Tavarez of his right to proceed

*pro se* or retain new counsel and file additional claims. Accordingly, as counsel has complied with the procedural requirements for withdrawing from representation, we will conduct an independent review to determine whether Tavarez' appeal is wholly frivolous.

In the **Anders** brief, counsel identified one issue that Tavarez wishes to raise: whether the trial court abused its discretion when it denied Tavarez' post-sentence motion challenging the weight of the evidence. **See Anders** Brief at 3. Counsel notes, however, that Tavarez' issue is more of a sufficiency claim rather than a weight claim. **Id.** at 5. To be certain, we will address both.

Initially, we observe that Tavarez' Rule 1925(b) statement only set forth a weight claim. Therefore, a challenge to the sufficiency of the evidence as to Tavarez' convictions was not preserved and ordinarily would be deemed waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998). Nevertheless, "[p]ursuant to **Anders**, this Court must review the merits of all claims set forth in an **Anders** brief in order to determine whether to grant counsel's petition to withdraw from representation, despite the fact that the issues have been waived" for failure to comply with Rule 1925. **Commonwealth v. Bishop**, 831 A.2d 656, 659 (Pa. Super. 2003). Thus, we will consider Tavarez' sufficiency claim.

Tavarez claims that the evidence was insufficient to sustain his conviction for attempted homicide. Specifically, Tavarez contends that the

Commonwealth failed to prove that he possessed the specific intent to kill Ms. Brooks and M.P. ***Anders*** Brief at 6. According to Tavarez, the dispute was between him and Jean Paul, not Brooks or M.P., and his actions that day were directed only toward Jean-Paul. N.T., 1/31/22, at 3-4. He maintains that, although he fired the gun in the direction of Jean-Paul's vehicle with Brooks and M.P. in it, there was no evidence that he intended to kill M.P. or Brooks. ***See*** Trial Court Opinion, 9/13/23, at 3. Tavarez further maintains that he did not know a child was involved or that he was in in the car. N.T., 1/31/22, at 4. Therefore, he claims that his conduct was only reckless as to M.P. and Brooks. ***Id.*** at 4.

Our standard of review when reviewing a challenge to the sufficiency of the evidence is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa. Super. 2019). Further, the trier of fact is free to believe, all, part, or none of the evidence presented. ***Commonwealth v. Beasley***, 138

A.3d 39, 45 (Pa. Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." ***Commonwealth v. Smith***, 146 A.3d 257, 261 (Pa. Super. 2016).

> The elements of attempted homicide are as follows:
>
> Criminal attempt is separately codified at 18 Pa.C.S.A § 901, which states, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).
>
> Criminal attempt is a specific-intent crime. Thus, attempted murder requires a specific intent to kill. ***Commonwealth v. Robertson***, 874 A.2d 1200, 1207 (Pa. Super. 2005) ("For the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal.").

***Commonwealth v. Palmer***, 192 A.3d 85, 88 (Pa. Super. 2018) (brackets omitted). Thus, attempted murder is composed of two primary elements: (1) the *mens rea* element, which is the specific intent to kill (which is identical to the *mens rea* element of murder in the first degree); and (2) the *actus reus* element, which is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing. ***See Commonwealth v. Predmore***, 199 A.3d 925, 929 (Pa. Super. 2018) (*en banc*).

The Commonwealth's burden to establish these elements may be satisfied by circumstantial evidence. ***Commonwealth v. Fortson***, 165 A.3d

- 8 -

10, 15 (Pa. Super. 2017). Where the defendant does not "verbalize the reasons for his actions, we are forced to look to the act itself to glean the intentions of the actor." *Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003). To the extent "the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct." *Id*. We may "infer that one intends the natural and probable consequences of his acts[.]" *Commonwealth v. Gease*, 696 A.2d 130, 133 (Pa. 1997).

Here, there was sufficient evidence for the jury to convict Tavarez of attempted homicide as to all three victims, including Brooks and M.P. First, the evidence showed that Tavarez took a substantial step toward killing all three. As the trial court observed: "The evidence presented at trial showed an intentional discharge of a barrage of bullets into an occupied car." Trial Court Opinion, 9/13/23, at 3.

Second, the evidence showed Tavarez had the requisite intent to kill all three victims. Tavarez essentially conceded at the post-sentence hearing that he was attempting to murder Jean-Paul. Even without this concession, the evidence was sufficient to establish this intent. The evidence showed that Tavarez and Jean-Paul had an ongoing dispute with each other; they had argued earlier on the day of the shooting. As Tavarez and Tyler walked away from the store, Tavarez threatened, "I got something for you." These circumstances are relevant to determining his intent. *See e.g. Commonwealth v. Cross*, 331 A.2d 813 (Pa. Super. 1974).

Instead of letting things go, Tavarez followed up on that threat. Tavarez left and got a gun. He then drove around the neighborhood with Tyler looking for Jean-Paul. Tavarez and Tyler pulled up to the driver's side of Jean-Paul's car, got out of their car, and, before opening fire, Tavarez said "what now p-----?"

The evidence also showed that Tavarez had the requisite intent to kill Brooks and M.P. Tavarez fired multiple shots into a fully occupied vehicle; Brooks and M.P. had just gotten into the car when Tavarez started shooting. Although Tavarez maintains he did not intend to kill Brooks or M.P., he saw Jean-Paul with Brooks earlier, so he knew she was with him. Furthermore, "[a] gun is a lethal weapon; pointing it towards a person, and then discharging it, speaks volumes as to one's intention." *Hall*, 830 A.2d at 543. The fact that Tavarez was illegally carrying a firearm that day provides further evidence of his intent. *See Fortson*, 165 A.3d at 16.

Most notably, with regard to Brooks and M.P., the evidence showed that bullets hit the car in the areas where they were sitting. In addition to the two bullet holes in the driver's door, a bullet was fired on the passenger's side which hit the car's hood and ricocheted to the windshield and a bullet hit the smaller rear window behind the driver's seat. Tragically, the bullet that hit the rear window, next to where M.P. was sitting, penetrated it, and hit him in the face just below his eye. The jury saw pictures of the vehicle and the window through which M.P. was shot. The window's glass was not tinted, and the window was large enough to see into the car. Because Tavarez was on

- 10 -

that side of the vehicle, the jury could have inferred that Tavarez was able to see the passengers and shot at the passengers as well despite Tavarez' claim to the contrary. Pointing and firing a deadly weapon at the vital parts of a victim's body may be deemed sufficient to demonstrate specific intent to kill.[4] *See Commonwealth v. Weiss*, 776 A.2d 958, 963 (Pa. 2001).

Based upon our review of the record and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to sustain Tavarez' convictions for attempted homicide as to all three victims.

---

[4] Even if this evidence was insufficient to establish Tavarez' intent to kill M.P., the intent element is satisfied under the doctrine of transferred intent. This doctrine provides, *inter alia*, that:

> When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:
>
> (1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused[]

18 Pa.C.S.A. § 303. As discussed above, the evidence indisputably showed that Tavarez intended to kill Jean-Paul, but M.P. is the one who was shot. Under the doctrine of transferred intent, Tavarez' intent to kill Jean Paul may be transferred to M.P and Brooks. Therefore, this element was established as to M.P. and Brooks.

- 11 -

Tavarez also claims that the trial court abused its discretion in concluding that the verdict was not against the weight the evidence when denying his motion for a new trial. *Anders* Brief at 5, 9. We review a challenge to the weight of the evidence in accordance with the following standard of review:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. *Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion*.
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added). Absent an abuse of discretion, the trial court's decision will not be disturbed. *See Commonwealth v. Griffin*, 515 A.2d 865, 869 (Pa. 1986). An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest

unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007). By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." ***Id.***

Initially, we observe that Tavarez does not explain how the trial court abused its discretion in denying his weight claim. ***See Anders*** Brief at 9. Furthermore, in support of his weight claim, Tavarez again maintains that the evidence did not demonstrate that he had the requisite intent to kill the victims. ***Anders*** Brief at 5, 9; ***see*** N.T., 1/31/22, at 2-5. He does not contest the credibility determinations of the jury or how it weighed the evidence. We therefore agree with counsel's initial assessment that the nature of Tavarez' claim was actually a sufficiency challenge.

Notwithstanding this, we note that the trial court, in denying Tavarez' weight claim, reviewed the evidence presented to support Tavarez' convictions. The court explained:

> [Tavarez] (and co-defendant) chose not to merely walk away and let the matter drop after an initial altercation with [] Jean-Paul. They instead attempted to shoot him as he was entering his parked car along with [] Brooks. The innocent 11 year-old, M.P., suffered serious bodily injury when the [Tavarez'] bullets penetrated the vehicle striking him in the head. Despite trial counsel's best efforts, the verdict of the jury was not in any way shocking. Further, the fact that the jury chose to acquit [Tavarez] of some charges is evidence of their careful consideration of the facts and law in this case.

Trial Court Opinion, 9/13/23, at 4.

Upon review of the record and the trial court's rationale, we conclude that the trial court did not abuse its discretion when it denied Tavarez' post-sentence motion challenging the weight of the evidence.

For the foregoing reasons, we conclude that Tavarez' claims on appeal are frivolous. Further, in accordance with ***Dempster***, we have independently reviewed the certified record to determine if there are any non-frivolous issues that counsel may have overlooked. Having found none, we agree that the appeal is wholly frivolous. Therefore, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/08/2024